# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

HAKIM MUHAMMAD,

               Petitioner,

    v.

MARTY ALLEN, Warden,

               Respondent.

1:15-cv-4148-WSD

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Alan J. Baverman's

Final Report & Recommendation [21] ("Final R&R"). The Final R&R

recommends the Court deny Petitioner Hakim Muhammad's ("Petitioner")

28 U.S.C. § 2254 Petition for Writ of Habeas Corpus [1] ("Section 2254 Petition").

Also before the Court are Petitioner's Objections to the Final R&R [24]

("Objections"), First Motion to Substitute Party [28], Second Motion to Substitute

Party [29], Motion to Stay and Certificate of Appealability [30], and Supplemental

Motion to Stay and Expand the Record and Certificate of Appealability [32].

# I.  BACKGROUND[1]

Petitioner, confined in Baldwin State Prison in Hardwick, Georgia,

challenges his October 21, 2010, Rockdale County, Georgia convictions.  On

November 4, 2009, officers responded to a 911 call from a concerned neighbor

who reported the sound of breaking glass at or near the home recently rented by

Sheila Muhammad.  Muhammad v. State, 725 S.E.2d 302, 304 (Ga. 2012).

Officers arrived at the home to find Sheila strangled to death and Petitioner,

Sheila's estranged husband, attempting to leave.  Id.  On February 1, 2010,

Petitioner was indicted in Rockdale County for malice murder, two counts of

felony murder, two counts of aggravated assault, and one count of tampering with

evidence.  Id. at 303 n.1.  The trial court directed a verdict on one count of felony

murder and one count of aggravated assault, and, following a jury trial on

October 18, 2010, Muhammad was found guilty on the remaining charges.  Id.

The trial court sentenced Muhammad to life imprisonment for malice murder with

six concurrent months for tampering with evidence.  Id.  The conviction for felony

---

[1]     The facts are taken from the Final R&R and the record.  The parties have not
objected to any specific facts in the Final R&R, and the Court finds no plain error
in them.  The Court thus adopts the facts set out in the Final R&R.  See Garvey v.
Vaughn, 993 F.2d 776, 779 n.9 (11th Cir.  1993).

murder was vacated by operation of law, and the conviction for aggravated assault merged with the conviction for malice murder.  Id.

Muhammad filed a motion for new trial on March 28, 2011, and an amended motion on July 1, 2011.  Id.  The motion for new trial was denied on August 4, 2011.  Id.  Muhammad subsequently filed a timely notice of appeal, and on April 14, 2012, the Georgia Supreme Court affirmed the judgment against Petitioner.  Id. at 305.  Petitioner filed a state habeas corpus petition in the Lowndes County Superior Court, which was denied on July 7, 2015. ([10.1]-[10.4]).  On November 2, 2015, the Georgia Supreme Court denied further review.  ([10.6]).  On November 27, 2015, Petitioner filed his Section 2254 Petition raising the following seven grounds for federal relief: (1) insufficient evidence; (2) a defective indictment; (3) prosecutorial misconduct; (4) ineffective assistance of appellate counsel on similar transaction evidence; (5) ineffective assistance of appellate counsel on ineffective assistance of trial counsel; (6) ineffective assistance of appellate counsel on additional issues; and (7) unconstitutional jury instructions and ineffective assistance of counsel.  ([1] at 6; see also [21] at 4).

On August 2, 2016, the Magistrate Judge issued his Final R&R, recommending denial of Petitioner's Section 2254 Petition.  The Magistrate Judge

concluded that (1) there was sufficient evidence to support Petitioner's conviction; (2) because there was no viable Fifth Amendment claim, neither trial nor appellate counsel were ineffective for failing to challenge the indictment on Fifth Amendment grounds; (3) Petitioner's prosecutorial misconduct, ineffective assistance of trial counsel, and erroneous jury instruction claims fail because they are procedurally defaulted; and (4) Petitioner fails to show any viable claim of ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel on prosecutorial misconduct. ([21] at 10-52). The Magistrate Judge also recommended that this Court deny a Certificate of Appealability ("COA") because Petitioner failed to make a substantial showing of the denial of a constitutional right. (Id. at 55).

On August 18, 2016, Petitioner filed his Objections to the Final R&R. The Objections, which consist of twenty-two hand-written pages, largely restate the arguments Petitioner made in support of his Section 2254 Petition. Petitioner claims that "nothing the Magistrate has suggested is close to being conclusive enough to cancel out the facts cited in the text so completely as to justify summary denial of [P]etitioner['s] claims of insufficient evidence or of his other grounds." (Obj. at 21).

On May 4, 2017, Petitioner filed his First Motion to Substitute Party, and on May 19, 2017, Petitioner filed his Second Motion to Substitute Party seeking the same relief requested in his First Motion. Petitioner seeks to change Respondent's name to the warden of the institution Petitioner was transferred to following the filing of his Section 2254 Petition.[2] Also on May 19, 2017, Petitioner filed a Motion to Stay and Certificate of Appealability. On June 22, 2017, Petitioner filed a Supplemental Motion to Stay and Expand the Record and Certificate of Appealability [32].[3]

---

[2] Petitioner states he has been transferred to Baldwin State Prison, and he seeks to change Respondent's name to Cedric Taylor, the warden of the prison. "If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." Rule 2(a), Rules Governing § 2254 Cases in the United States District Courts. The proper respondent is ordinarily the warden of the petitioner's institution. Id., Advisory Committee Notes. Because Petitioner is now in the custody of Warden Taylor, Petitioner's First Motion to Substitute Party and Second Motion to Substitute Party are granted.

[3] Petitioner seeks additional time to expand the record "so vital information and testimony" can be obtained from State witnesses Deputy Huner and Hakeem Davis. ([30]). In a habeas corpus proceeding, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure." Rule 6, Rules Governing Section 2254 Cases in the United States District Court. The party requesting discovery must show good cause that the evidence he seeks would create doubt that is sufficient to undermine confidence in his conviction. Arthur v. Allen, 459 F.3d 1310, 1310 (11th Cir. 2006). Good cause cannot be based on speculation or hypothesis. Id. Under AEDPA, a federal petitioner, moreover, is not entitled to discovery on factual matters that, as a result of lack of

## II.  DISCUSSION

### A.    Standard of Review of a Magistrate Judge's R&R

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); <u>Williams v. Wainwright</u>, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  Where no party has objected to the report and recommendation, the Court conducts only a plain error review of the record.  <u>United States v. Slay</u>, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).  Because Petitioner objects to the R&R, the Court conducts its review *de novo*.

---

diligence, he failed to develop in state court.  <u>Crawford v. Head</u>, 311 F.3d 1288, 1329 (11th Cir. 2002).

Petitioner seeks now, five years since his conviction, to obtain an affidavit and/or conduct a deposition of two state witnesses—something that could have been done years ago.  Petitioner has not reasonably or diligently pursued the development of this material, and, as indicated in this Order, none of these matters would bring into question other significant evidence against Petitioner.  The Court therefore denies Petitioner's Motions.

B.    Procedurally Defaulted Claims

Petitioner raises a number of grounds for relief that he did not present at the trial level or on direct appeal, including (1) ineffective assistance of appellate counsel regarding his grand jury indictment; (2) erroneous jury instruction on presumption; and (3) prosecutorial misconduct.

A federal habeas petitioner must first exhaust his state court remedies or show that a state corrective process is unavailable or ineffective to protect his rights.  28 U.S.C. § 2254(b)(1).  Exhaustion requires that a state prisoner present his claims, on direct appeal or collateral review, to the highest state court according to that state's appellate procedure.  Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010) (per curiam).  "Under Georgia law, a prisoner seeking a writ of habeas corpus vacating his conviction must present all of his grounds for relief in his original petition."  Mincey v. Head, 206 F.3d 1106, 1136 (11th Cir. 2000); see O.C.G.A. § 9-14-51 ("All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless . . . [those grounds] could not reasonably have been raised in the original or amended petition.").  This procedural rule is designed to bar successive habeas petitions on a single conviction.  See Hunter v. Brown, 223 S.E.2d 145, 146 (Ga. 1976).

The Eleventh Circuit has "repeatedly recognized that not complying with this [Georgia procedural] rule precludes federal habeas review." Mincey, 206 F.3d at 1136; see Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) (concluding "that a state habeas court would hold [petitioner's] claims to be procedurally defaulted and not decide them on the merits, because they were not presented in his initial state habeas petition" and "that those claims [therefore] are procedurally barred from review in this federal habeas proceeding and exhausted.").

A petitioner may obtain federal habeas review of procedurally defaulted claims by (1) showing cause and actual prejudice, or (2) presenting "proof of actual innocence, not just legal innocence." Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). "To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his [or counsel's] effort to raise the claim properly in state court" or that the matter was not raised because of ineffective assistance counsel. Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). If a petitioner shows cause, he must also show prejudice, which requires a showing of an actual and substantial disadvantage to his defense. Id.

1.    Ineffective Assistance of Appellate Counsel Regarding Grand
      Jury Indictment

In his Section 2254 Petition, Petitioner argues that his Fifth Amendment

rights were violated because of a defective indictment.  ([1] at 6).  Petitioner

specifically contends that (1) the indictment cites statutory language but not

malicious intent or the elements of the charged crimes in Counts One through Six;

(2) the grand jury was never presented evidence to show that Petitioner was present

when the crime was committed; (3) the indictment was based on the false

testimony of Deputy Huner, which would have been shown to be false if a picture

had been taken from Huner's vantage point when entering the victim's home; (4)

certain test results were not completed until after the grand jury returned the

indictment; (5) the grand jurors were not presented with anything to rebut

Petitioner's alibi defense that he was napping during the murder; and (6) there was

otherwise insufficient evidence to support the indictment.  (Id. at 15-19).

Because Petitioner did not present this claim on direct appeal or collateral

review, it is procedurally defaulted.  Petitioner, moreover, cannot overcome this

procedural default because he cannot show cause or actual prejudice.  This is

because the Fifth Amendment's grand jury indictment requirement is not

applicable to the States under the Fifth Amendment.  Heath v. Sec'y, Fla. Dep't of

Corr., 717 F.3d 1202, 1204-05 (11th Cir. 2013) ("'The Fifth Amendment's grand

jury indictment requirement' is not applicable to the States.") (quoting <u>McDonald v City of Chicago</u>, __ U.S. __, 130 S.Ct. 3020, 3035 n.13 (2010)). The Court finds that Petitioner's appellate counsel could not have been deficient for failing to raise a claim that was not cognizable.[4] Because Petitioner does not provide sufficient argument to show cause or prejudice for his procedural default, the Court denies habeas corpus relief on this claim.

---

[4] To the extent Petitioner intended to argue that the grand jury indictment violated his Sixth Amendment rights, which requires that "the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ," the Court finds that this claim was presented on collateral review and that the state habeas court's decision demonstrates a reasonable application of the law. The state habeas court found:

> Petitioner has not shown that appellate counsel acted unreasonably when, after reviewing the indictment, counsel did not raise any issues as to the indictment. Despite Petitioner's claims that three counts of murder in the indictment were incorrect, Petitioner was only convicted and sentenced for one of those counts – i.e., malice murder; the court directed a verdict of acquittal on the count two felony murder and merged the count three felony murder, of which Petitioner was found guilty, into the malice murder. The Court's review of count one, malice murder, shows that it tracks the statutory language of O.C.G.A. § 16-5-1. Accordingly, counsel acted reasonably when he saw no basis on which to allege that trial counsel was ineffective when trial counsel did not challenge counts one, two and three of the indictment. Petitioner also failed to establish the requisite prejudice in this regard.

([10.4] at 9). On *de novo* review, the Court finds the state habeas court's consideration of whether the grand jury indictment violated Petitioner's Sixth Amendment rights warrant deference pursuant to 28 U.S.C. § 2254(d).

## 2.    Jury Instruction on Presumption

Petitioner asserts that his due process rights were violated by the following jury instruction on presumption:

> Now ladies and gentlemen, every person is presumed to be of sound mind and discretion.  But this presumption may be rebutted.  You may infer, ladies and gentlemen, if you wish to do so, that the acts of a person of sound mind and discretion are the product of that person's will, and a person of sound mind and discretion intends the natural and probable consequences of those acts.  Whether or not you make such inference or inferences is a matter solely within the discretion of the jury.

([10.21] at 32).  Petitioner argues that the instruction caused him to be convicted without proof beyond a reasonable doubt of intent to kill and asserts that his trial counsel and appellate counsel were ineffective on this issue.  ([1] at 43-44).  Petitioner did not raise this issue at trial, on appeal, or on collateral review, and thus it is procedurally defaulted.

The Court finds further that Petitioner fails to overcome his procedural default.  Even if trial counsel challenged the instruction or appellate counsel raised the issue on appeal, there is no reason to believe that the challenge would have been successful.  The presumption instruction, taken directly from the Georgia

state court pattern jury instructions,[5] has been upheld by the Supreme Court of Georgia as a correct statement of the law. Rivera v. State, 282 Ga. 355, 365(9) (Ga. 2007); see also Pendley v. State, 308 Ga. App. 821, 826 (2011) (rejecting the petitioner's argument that reading the identical charge impermissibly shifted the burden of persuasion to the petition on the element of intent). The Court therefore finds Petitioner cannot show cause or prejudice with respect to his jury instruction claim, and it is dismissed as procedurally defaulted.

### 3. Prosecutorial Misconduct

Petitioner argues in his Section 2254 Petition that his conviction was obtained by prosecutorial misconduct. That is, Petitioner alleges that the prosecution (1) manipulated his son, Hakeem, and presented false testimony by Hakeem that Petitioner was the driver and the victim the passenger on the morning of the murder when Hakeem previously told the assistant district attorney that Petitioner was the passenger; (2) presented false testimony by Deputy Huner that he saw Petitioner coming down the stairs, turning around, and proceeding back up the stairs because Deputy Huner could not have possibly seen this from his vantage point; (3) presented false testimony of Inez Watson; (4) during closing statements

---

[5] See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Fourth Ed., Vol. II, § 1.41.12 (2008).

misstated Dr. Smith's testimony and argued Petitioner committed the murder; (5) asserted, without factual support, that Petitioner strangled the victim from behind; (6) asserted eight times, without adequate evidentiary support, that Petitioner killed the victim; (7) vouched for the credibility of the state witnesses; (8) asserted as a divorce motive, which was not substantiated by the record; (9) asserted that Petitioner staged things to look like a burglary; and (10) told the jury there were marks on the victim's neck to match the ribbon that killed the victim. ([1] at 20-30).

Petitioner did not raise the issue of prosecutorial misconduct on direct appeal, but he did raise it as part of his state habeas proceedings. ([10.4] at 11-12). The state habeas court found the prosecutorial misconduct claim failed under O.C.G.A. § 9-14-48(d) because it was procedurally defaulted based on Petitioner's failure to raise it on direct appeal and because Petitioner had not overcome his default by a showing of cause of prejudice. (Id. at 14-15). Under Georgia law, a claim of trial error that is not raised on direct appeal generally is deemed waived and thus procedurally barred from consideration in a subsequent state proceeding for collateral relief. Chatman v. Mancill, 278 Ga. 488, 489 (2004); Black v. Hardin, 255 Ga. 239, 239-40 (1985) (holding that failure to timely raise an issue at trial "or to pursue the same on appeal" constitutes a procedural default"). Petitioner

argues in his Objections that the issue was not raised on direct appeal because of

ineffective assistance of appellate counsel. ([24] at 13).  Petitioner fails, however,

to provide any argument or supporting facts demonstrating why his appellate

counsel was ineffective in raising the issue of prosecutorial misconduct on appeal.

The Court will not disturb the state habeas court's determination, and also finds

Petitioner's prosecutorial misconduct claim was procedurally defaulted.

Petitioner's Objections are overruled, and the claim is dismissed.

     C.     <u>Grounds Adjudicated on the Merits</u>

Petitioner raises the following claims that were adjudicated on the merits on

direct appeal or by the state habeas court: (1) sufficiency of the evidence to support

conviction; (2) similar transaction evidence improperly admitted; (3) ineffective

assistance of appellate counsel.

A federal court may not grant habeas relief for claims previously adjudicated

on the merits by a state court unless the state court's decision (1) "was contrary to,

or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States," or (2) "was based on an

unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d).  "[A]n *unreasonable* application of

federal law is different from an *incorrect* application of federal law."

Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 103.  The state court's determinations of factual issues are presumed correct, absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1).

### 1.    Sufficiency of the Evidence

Petitioner first challenges whether the evidence presented at trial was sufficient to convict him.  As part of Petitioner's direct appeal, the Georgia Supreme Court summarized the evidence underlying Petitioner's conviction in its April 24, 2012, decision as follows:

> [I]n the fall of 2009, Muhammad and his wife Shelia separated.  On October 17, 2009, Shelia rented a house that was in short walking distance from the couple's former marital residence, where Muhammad continued to live.  At approximately 7:05 a.m. on November 4, 2009, Muhammad's son, Hakeem, saw Muhammad and Shelia leave the marital residence in Shelia's car while Hakeem was waiting for his school bus.  Hakeem observed that Muhammad was driving and that the vehicle turned in the direction of Shelia's new residence.
>
> At about 7:36 a.m., Gbolii Burton, who lived next door to the house Shelia had just rented, heard the sound of breaking glass outside and

called 911.  Deputy Huner and Deputy Blake responded. Deputy Huner went to the back of the house and saw a broken window with glass lying on the ground below the window, indicating that the window had been broken from the inside.  Through the window, Deputy Huner observed Muhammad descending an interior staircase.  As soon as Muhammad saw the deputy, he turned and went back up the stairs.  Deputy Huner radioed Deputy Blake that Muhammad was coming out the front door, and Deputy Blake confronted Muhammad there.  Deputy Blake testified that Muhammad "was scurrying trying to leave the area real fast."  After being ordered to stop, Muhammad calmly said, "My wife is inside and I don't think she's breathing."

Inside the home, Shelia's body was found lying on the floor next to a piece of white ribbon, which Shelia's son, Javonte, had previously seen lying on the floor of Muhammad's home.  Based on marks on her neck, the State's medical experts determined that the ribbon had been used to strangle Shelia to death.  DNA testing showed that Shelia's DNA was on the middle and ends of the ribbon where it had been around her neck, but Muhammad's DNA was only on the ends of the ribbon, where it would have been tied or held during strangulation.

Following a search, Shelia's wedding ring was found in Muhammad's pocket.  Later, when asked by Lt. Wolfe in a recorded interview why the situation between Muhammad and Shelia had gone so far and become violent, Muhammad replied that Shelia had actually tried to choke him.  Muhammad admitted he removed Shelia's wedding ring from her finger as she lay on the floor and put it in his pocket. He also admitted he broke the rear window.  Muhammad denied any intention to harm Shelia, however, and testified that he broke into her rental home from the outside to see if she was okay.

In addition, the evidence showed that, on at least two prior occasions, there had been domestic violence between Muhammad and Shelia.  In one such instance, Muhammad grabbed Shelia by the throat prior to pushing her backward.  Also, similar transaction evidence was admitted showing that Muhammad had a prior romantic involvement with Alvinice Muhammad (no relation).  Alvinice purchased a home in Marietta that she shared with two female housemates.  Alvinice

allowed Muhammad to stay at that home for a few weeks. Muhammad began acting violently toward Alvinice, however, and Alvinice asked Muhammad to move out. Muhammad refused. Alvinice then decided to obtain a restraining order against Muhammad. On the morning she planned to do so, Alvinice woke to find Muhammad straddling her body and choking her with both hands on her throat. Muhammad released Alvinice only after one of her roommates ran into the room. Thereafter, Alvinice obtained the restraining order. In retaliation, Muhammad burned down Alvinice's house, telling her: "I told you I could get into the house anytime I got ready, and if I can't live in the house, nobody can live in the house."

Muhammad, 725 S.E.2d at 304.

Shelia's certificate of death confirms that her cause of death was ligature

strangulation, rules her death a homicide, and notes that her approximate time of

death was 7 a.m. ([10.29] at 12). During Defendant's June 13, 2013, state habeas

corpus evidentiary hearing, John T. Huner, a police officer for the Rockdale

County Sheriff's Department, testified:

As I approached the house to the broken window, I stopped just on this side of the broken window to see if I could hear anything coming from inside, at which time, I peered around the window without exposing myself. And shortly thereafter, I observed a couple of legs coming down the stairs, because I could see a stairway coming down. I watched until a person appeared at the bottom of the steps. The person stood there for a moment. I kept my eye on the person because I wanted to see if he might have a weapon or something in his hand . . . . [W]hen I saw that he was not holding anything in his hand such as a weapon, I moved myself in front of the window. He was still standing there and he was kind of looking down. I'm looking at him. He looks up. I look at him. He immediately turns around, starts walking back up the stairs, at which time, I got on the radio and advised Officer Blake that he was coming out the front door.

([10.16] at 31-32). Lieutenant Matthew Wolfe of the Rockdale County Sheriff's Department also testified about what he observed after he was called to investigate the crime scene. He stated he observed a normal skin tone "except for the face which was purple." ([10.16] at 73-74). He noted that "[i]t seemed the body was limp" and "[t]here was no rigor or . . . lividity," which signaled the individual was recently deceased. (Id.).

In a November 4, 2016, police report, Lieutenant Wolfe stated that he showed the murder weapon, a ribbon, to the victim's children, Javonte and Hakeem, and that Javonte stated he had seen the ribbon in the marital residence but that Hakeem had not. ([10.9] at 70-71). In another report, Jennifer L. Perry, also a police officer for the Rockdale County Sherriff's Department, stated that Javonte reported to her that "he ha[d]n't seen a cloth that has a gold design on it." ([10.9] at 78-79). Javonte testified at trial that he had seen the ribbon but later clarified that he had not seen it in at least one of the houses they had recently stayed. ([10.19]).

Dr. Geoffrey Smith, the medical examiner and an expert in forensic pathology, testified that the victim had a ligature mark around her neck, which was a distinct imprint on the victim's neck and about the width of a finger, and that she died as a result of ligature strangulation, *i.e.*, the ligature had been applied around

her neck with sufficient force to kill her. ([10.18] at 19). Dr. Smith further

testified that the intense congestion of blood in the victim's facial tissue went "a

long way" in suggesting the cause of death was strangulation—although such

intense congestion, alone, is not "specific for strangulation." ([10.18] at 25). The

ligature mark was on the front of the victim's neck, and Dr. Smith testified that this

was consistent with the assailant strangling her from behind. (Id. at 30). Dr.

Smith testified that the marks on the victim's skin included lines that occurred in a

parallel array and were consistent with the pattern on the piece of fabric found near

the victim's body. ([10.18] at 41-42). DNA forensic expert Cynthia Wood

testified that the ribbon had two DNA profiles on it, that the victim's DNA was in

the middle and ends of the ribbon, and that Petitioner's DNA was on only the ends.

(Id. at 53, 59). Criminal investigator Amanda Pilgrim—who admitted she failed to

conduct follow-up testing on Petitioner's hands—testified that she observed

discoloration on the creases of Petitioner's fingers, that, in her experience,

potentially could be marks or a burn. ([10.16]).

Petitioner testified that he and his wife left the marital residence at

approximately 7:10 a.m., and that, when he remembered he left a new pack of

cigarettes at the home, his wife dropped him back off at approximately 7:11 a.m. or

7:12 a.m. ([10.20]). Petitioner then apparently fell asleep and woke up at what he

thought was 8:23 a.m. but which later turned out to be earlier.  (Id.).  Petitioner

testified that he woke up, took a walk, and "just happened" to walk towards his

wife's new house, and that he was concerned about her because she had recently

been suicidal.  (Id.).  Petitioner testified that when he arrived at the house and no

one responded, he broke the rear window, entered the home, and found his wife

dead.  (Id.).  Petitioner stated that he removed the ribbon from her neck and took

the ring off her finger.  (Id.).

On appeal, Petitioner contended that the evidence was insufficient to support

the verdict against him.  Muhammad, 725 S.E.2d at 303.  The Georgia Supreme

Court found, however, under Jackson v. Virginia, 443 U.S. 307 (1979), that the

evidence was sufficient to convict Defendant.  Id. at 304.  In his Section 2254

Petition, Petitioner contends the evidence is insufficient because (1) Petitioner's

sons provided inconsistent testimony regarding the ribbon used to strangle the

victim; (2) the state never presented evidence of the origin of the ribbon; (3)

Petitioner's DNA was on only the ends of the ribbon; (4) the state failed to show

that Petitioner was present with the victim during the twenty to thirty minutes

before her death, when Petitioner testified that he was asleep; (5) the medical

examiner's evidence was inconclusive on whether the victim was strangled from

the front or back of her person; (6) no DNA evidence from the victim's finger nails

was ever presented; and (7) the medical examiner testified that the ligature marks on the victim were not specific to strangulation. ([1] at 12-14). Petitioner, in his Objections to the Final R&R, essentially repeats the arguments in his Section 2254 Petition. He objects to the Magistrate Judge's interpretation of his children's testimony regarding whether they had ever seen or previously identified the murder weapon. ([24] at 2-4). Petitioner also rebuts the Magistrate Judge's consideration of Dr. Smith's testimony regarding how the victim died, the crediting of Amanda Pilgrim's testimony regarding discoloration on Petitioner's hands, the significance of finding only Petitioner's and the victim's DNA profiles on the murder weapon, and Petitioner's statement to Lieutenant Wolfe that the events escalated because the victim "came at him." (Id. at 4-10).

When reviewing a challenge to the sufficiency of the evidence, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Grimes v. Taylor, No. 1:15-CV-1757-TWT, 2015 WL 5827610, at *6 (N.D. Ga. Oct. 5, 2015). "When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant." Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir.

2001).  "In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence."  Id.

Here, the evidence shows, among other things, that the victim was strangled to death—most likely from behind, that Petitioner's children had likely previously seen the ribbon used to murder the victim, that Petitioner was with the victim and present at the victim's home in very close proximity to the time of the victim's death, that Petitioner's DNA was present on the ends of the ribbon found next to the victim, and that Petitioner had been violent toward the victim previously.  Any inconsistency in Petitioner's children's testimony was ferreted out at trial, and it was the jury's responsibility and duty to weigh the children's credibility and their testimony regarding the ribbon.  In fact, it was the jury's duty to consider and weigh the credibility of all of the testimony presented.

Petitioner's characterization that Dr. Smith testified that the ligature marks were non-specific to strangulation is a misstatement.  Dr. Smith testified that the intense congestion of blood in the victim's facial tissue went "a long way" toward suggesting strangulation, but that congestion, without more, was not specific for strangulation.  ([10.18] at 25).  Dr. Smith implied that the facts of this case, in addition to the congestion in the victim's face, allowed him to conclusively determine that the victim died from strangulation.  (Id.).  Petitioner's

misrepresentation does not impact whether or not the evidence was sufficient to convict him.

Petitioner also fails to show how or why the lack of his DNA in the middle of the ribbon, the lack of evidence surrounding the ribbon's origin, or the lack of evidence establishing his position during the strangulation of the victim, are matters that render insufficient the evidence against him. The evidence demonstrated that the ribbon had the victim's DNA on it and Petitioner's DNA on the ends, where it would have been held or tied during strangulation. The jury was entitled to determine the Petitioner's credibility and the circumstances surrounding the victim's death. It was also within the jury's province to determine whether to credit Petitioner's testimony regarding the timeline of events in the early morning hours leading up to the victim's death.

In every trial, parties present evidence tending to prove or disprove the guilt of the accused. Some evidence is more credible than other evidence, and it is the jury's duty to weigh the credibility and make a final determination whether to credit it. In this case, there was a substantial amount of evidence presented at trial showing that the Petitioner strangled the victim. Petitioner fails to demonstrate that the Georgia Supreme Court was unreasonable in finding that the evidence presented at trial was sufficient to support his conviction. The Court, upon *de novo*

review, thus finds the state courts' decisions—both on direct and collateral review—regarding the sufficiency of the evidence in this case warrant deference pursuant to 28 U.S.C. § 2254(d).

2.    Similar Transaction Evidence

Petitioner next challenges whether the trial court erred in allowing similar transaction evidence with regard to his conduct toward another woman, Alvinice Muhammad.  ([10.30]).  Petitioner's counsel argued at trial that the prior incident should have been excluded because it occurred more than ten years prior and was arson, not murder.  (Id.).  In considering the issue on appeal, the Georgia Supreme Court held there was no error.  Muhammad, 725 S.E.2d at 305.  The court held:

> [S]imilar transaction evidence was admitted showing that [Petitioner] had a prior romantic involvement with Alvinice Muhammad (no relation). Alvinice purchased a home in Marietta that she shared with two female housemates.  Alvinice allowed Muhammad to stay at that home for a few weeks. Muhammad began acting violently toward Alvinice, however, and Alvinice asked Muhammad to move out. Muhammad refused.  Alvinice then decided to obtain a restraining order against Muhammad.  On the morning she planned to do so, Alvinice woke to find Muhammad straddling her body and choking her with both hands on her throat.  Muhammad released Alvinice only after one of her roommates ran into the room.  Thereafter, Alvinice obtained the restraining order.  In retaliation, Muhammad burned down Alvinice's house, telling her: "I told you I could get into the house anytime I got ready, and if I can't live in the house, nobody can live in the house."
>
> . . . .

> [T]he State offered the evidence of the prior arson to show
> [Petitioner's] bent of mind or course of conduct in using escalating
> degrees of violence toward women.  [Petitioner] pushed and shoved
> both Alvinice and Shelia.  [Petitioner] choked both Alvinice and
> Shelia.  With both women, there was the development of a romantic
> relationship, a separation, and a resulting escalation of domestic
> violence including choking.  The similarities are apparent.  As such,
> the trial court did not err in its determination that [Petitioner's] crime
> against Alvinice was sufficiently similar to the murder of Shelia to
> constitute an admissible similar transaction.

Muhammad, 725 S.E.2d at 304-05.

In his state habeas corpus proceedings, Petitioner asserted ineffective assistance of trial and appellate counsel for failing to consult with him in regard to the introduction of similar transaction evidence.  ([10.4] at 5-6, 12).  The state habeas court found that counsel consulted with Petitioner, that, as a general matter, counsel would have consulted Petitioner regarding similar transaction evidence as it was raised on appeal, and that Petitioner had not shown that appellate counsel was deficient.  (Id. at 5, 11).  The state habeas court found that Petitioner's claims of ineffective assistance of trial counsel failed because he had procedurally defaulted them and had not overcome his default.  (Id. at 14-15).

In his Section 2254 Petition, Petitioner argues that appellate counsel provided ineffective assistance of counsel by failing to adequately argue the erroneous admittance of similar transaction evidence on Petitioner's violence toward Alvinice, that the trial court erred in allowing such evidence, and that trial

counsel provided ineffective assistance on the issue. ([1] at 31-34). Petitioner

contends that appellate counsel should have argued that the transactions were

dissimilar because he was not in a romantic relationship with Alvirice at the time

he admittedly set fire to her home—although they had been in one previously. (Id.

at 32). Petitioner further states that there was no evidence to show that he had

assaulted Alvirice. (Id.).

A criminal defendant possesses a Sixth Amendment right to "reasonably

effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984).

To show constitutionally ineffective assistance of counsel, a petitioner must

establish that (1) counsel's representation was deficient and (2) counsel's deficient

representation prejudiced him. Id. at 690-92. The Court may resolve an

ineffective assistance of counsel claim based on either of these two prongs. Pooler

v. Sec'y, Fla. Dep't of Corr., 702 F.3d 1252, 1269 (11th Cir. 2012). Claims of

ineffective assistance of appellate counsel are also governed by the Strickland test.

Owen v. Fla. Dep't of Corr., 686 F.3d 1181, 1202 (11th Cir. 2012). To succeed on

a claim of ineffective assistance of appellate counsel, the movant must demonstrate

deficient performance by counsel and demonstrate that, if counsel had not

performed deficiently, there is a reasonable probability that the appellate outcome

would have been favorable to the movant.  See Ferrell v. Hall, 640 F.3d 1199, 1236 (11th Cir. 2011).

Petitioner fails to show that his appellate counsel was ineffective in handling the admission of the similar transaction evidence involving Alvirice.  Although Petitioner apparently was not in a romantic relationship with Alvirice at the time of the arson, he admitted he was in one with her previously.  The facts underlying the events between Alvirice and Petitioner—including the choking incident and general violence—were sufficient to show similarity to Petitioner's behavior toward the victim here.

Alvirice, moreover, provided the following testimony at Petitioner's June 13, 2013, state habeas corpus evidentiary hearing:

> He began to get violent.  He began to shove and push me and just – be violent.  We would have arguments with me telling him, he's got to go.  He just needs to go.  And he said he wasn't going.  He was going when he got ready to go.  So he started getting violent.

([10.18] at 75).  As a result, Alvirice decided to obtain a restraining order.  The morning that she and her roommates planned to go to the sheriff's office together, she "woke to [Petitioner's] hands at [her] throat telling [her] to get out and go to work."  (Id.).  Alvirice continued:

> He was at my throat like this on me, you know, laying on me.  I am in the bed so he was laying straddled to me.  Then when Laverne actually came to the door because she heard screaming, I began to

> struggle.  So she stopped him.  The fact that she came in actually
> stopped the incident.

(Id. at 76).

First, the Court finds nothing that appellate counsel could have, or should

have, raised on appeal that reasonably would have changed the Georgia Supreme

Court's decision.  The facts underlying the incidents with Alvirice and the victim

were similar, and the Court finds appellate counsel could not have done more to

distinguish them.  Second, with respect to whether the trial court should have

admitted the similar transaction evidence in the first instance, the due process

clause, absent the involvement of a specific constitutional right, gives a federal

court limited authority to review a state court's evidentiary rulings.  Hall v.

Wainwright, 733 F.2d 766, 770 (11th Cir. 1984).  Absent a violation that rises to

the level of denying "fundamental fairness," the Court will not review a state

court's decision to admit evidence.  Id. at 770 (quoting Shaw v. Boney, 695 F.2d

528, 530 (11th Cir. 1983)).  "To constitute a denial of fundamental unfairness, the

evidence erroneously admitted at trial must be material in the sense of a crucial,

critical, highly significant factor."  Jameson v. Wainwright, 719 F.2d 1125, 1127

(11th Cir. 1983).  The Court finds no fundamental unfairness in the state court's

evidentiary decision.  The similar transaction evidence was not critical or crucial to

Petitioner's case.  The evidence against Petitioner, independent of the similar

transaction evidence, was sufficiently strong and a jury could have convicted on that basis alone. Upon a *de novo* review, the Court finds that the state courts' decisions, on both direct and collateral review, regarding the admittance of similar transaction evidence warrant deference pursuant to 28 U.S.C. § 2254(d).

### 3. Ineffective Assistance of Appellate Counsel

Petitioner argues that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel and that the state habeas court's decision on the issue was contrary to federal law. ([1] at 34). Petitioner argues that appellate counsel should have argued that trial counsel was ineffective because he failed to (1) obtain a photograph of Deputy Huner's vantage point from the window; (2) present expert testimony on whether the downstairs window was broken from inside or outside the residence; (3) discover Alvinice's conviction for crime of deceit, thus making the similar transaction evidence inadmissible; (4) present testimony from his son's on where the victim stayed before her death; (5) challenge the indictment; (6) investigate the origin of the fiber found on the victim and the blood found next to her; (7) present evidence and/or testimony from Valery Drinkard to show why Petitioner and the victim were separated and that Petitioner had initiated the separation; and (8) object to the evidence that his son Javonte had seen the ribbon in a prior home. ([1] at 34-38).

Strickland requires that Petitioner show that counsel was deficient and that Petitioner was prejudiced by the deficiency. Strickland, 466 U.S. at 690-92. Where a petitioner raises an ineffective assistance of counsel claim already decided by the state court, "the petitioner must do more than satisfy the Strickland standard; the petitioner must also show that the state court applied Strickland in an objectively reasonable manner." Frederick v. Dep't of Corr., 428 F. App'x 801, 803 (11th Cir. Aug. 17, 2011); see also Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (finding the standard of review is "doubly deferential" when "a Strickland claim [is] evaluated under the § 2254(d)(1) standard")).

Petitioner fails to present evidence or argument demonstrating that the state habeas court unreasonably applied Strickland. Petitioner also fails to show any viable claim of ineffective assistance of trial counsel or that he had a reasonable chance of succeeding on appeal. Petitioner's claims regarding his counsel's failure to introduce certain testimony or evidence are inadequate because there was no proffer of this evidence or testimony at the outset, and therefore prejudice cannot be shown. The Eleventh Circuit has held that, absent proffer of evidence, a petitioner cannot show prejudice based on counsel's failure to introduce such evidence. See Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999); see also Gilreath v. Head, 234 F.3d 547, 552 n. 12 (11th Cir. 2000). The following of Petitioner's

claims must be dismissed on this basis alone: (1) Petitioner's claim that photographic evidence of Deputy Huner's view of the stairs would have shown that Deputy Huner did not in fact see Petitioner descend and then ascend the stairs in the victim's home; (2) Petitioner's claim that expert testimony would have shown Petitioner did not break the window; (3) Petitioner's claim that the fiber found on the victim and the blood on the floor next to her would have uncovered exculpatory evidence; and (4) Petitioner's claim that Drinkard would have testified to Petitioner's cause for separation.

Petitioner's claim that Alvinice's alleged conviction for a crime of deceit would have precluded the admittance of similar transaction evidence also fails. There is no evidence in the record, nor could this Court find, evidence confirming Alvinice's conviction. ([21] at 43 n.20). Petitioner also presents no argument or evidence showing that the alleged conviction would have changed the state trial court's decision to admit the similar transaction evidence. Instead, evidence was presented that Petitioner was convicted of arson of Alvinice's home, which was perhaps enough for the jury to corroborate her story. Finally, Petitioner's son Javonte's testimony regarding the ribbon was scrutinized at trial, and it was the jury's duty to weigh the testimony and evidence before it. There is nothing before the Court that persuades it that Petitioner's appellate counsel failed as to Javonte's

testimony.  The Court, upon *de novo* review, finds the state habeas court's decision

regarding Petitioner's ineffective assistance of appellate counsel claim warrants

deference pursuant to 28 U.S.C. § 2254(d).

D.     Certificate of Appealability

A federal habeas "applicant cannot take an appeal unless a circuit justice or a

circuit or district judge issues a certificate of appealability under 28 U.S.C.

§ 2253(c)."  Fed. R. App. P. 22(b)(1).  "The district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant."

Rules Governing Section 2254 Cases in the United States District Courts, Rule

11(a).  A court may issue a certificate of appealability ("COA") "only if the

applicant has made a substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional

right "includes showing that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were 'adequate to deserve encouragement to proceed

further.'"  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting

Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

> When the district court denies a habeas petition on procedural
> grounds . . ., a COA should issue when the prisoner shows, at least,
> that jurists of reason would find it debatable whether the petition
> states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack, 529 U.S. at 484.

The Magistrate Judge found that a COA should be denied because it is not debatable that Petitioner fails to assert claims warranting federal habeas relief. ([21] at 55). The Court agrees, and a COA is denied. Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Alan J. Baverman's Final Report & Recommendation [21] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Petitioner's Objections to the R&R [24] are **OVERRULRED**.

**IT IS FURTHER ORDERED** that Petitioner's First Motion to Substitute Party [28] and Second Motion to Substitute Party [29] are **GRANTED**. The Clerk of Court is **DIRECTED** to substitute Warden Cedric Taylor as Respondent.

**IT IS FURTHER ORDERED** that Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus [1] is **DENIED**. A COA is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Stay and

Certificate of Appealability [30] and Supplemental Motion to Stay and Expand the

Record and Certificate of Appealability [32] are **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.


**SO ORDERED** this 8th day of February, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE